AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Mississippi



FILED

AUG -5 2019

BY_____ DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched*
*or identify the person by name and address)*

P H FOOD, INC
4013 Highway 80, Morton, MS 39117
as described in Attachment A

)
)
)
)
)
)

Case No. 3:19mj213 LRA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ____Southern____ District of ____Mississippi____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 8 USC 1324(a) | Unlawful Employment of Aliens |

The application is based on these facts:

See affidavit of SA Anthony Todd Williams, Jr., which is attached and incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Anthony Todd Williams, Jr., SA HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____08/05/2019____

_____
*Judge's signature*

City and state: Jackson, MS

Linda R. Anderson, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION



|  |  |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br>P H FOOD, INC.<br>4013 HIGHWAY 80,<br>MORTON, MS 39117 | Case No. 3:19mj213 LRA<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Anthony Todd Williams Jr., being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant to search the following premises and seize the items listed in Attachment B:

a.      The business is located at 4013 Highway 80, Morton, Mississippi (MS) 39117, and its curtilage and outbuildings, appurtenances, and attached and detached garages and vehicles and trailers located on such curtilage, including any and all parking lots; more particularly described in Attachment A.

2.      This affidavit sets forth facts establishing probable cause to believe that P H Food, Inc. and others are willfully and unlawfully employing illegal aliens in violation of Federal Law and within the locations which are further described in Attachment A, currently exists those items, set forth in Attachment B, which constitutes evidence, instrumentalities, contraband and/or fruits of the violations.

3.      I am a Special Agent with Homeland Security Investigations ("HSI"), within United States Immigration and Customs Enforcement ("ICE").  I am assigned to the Office of the Resident Agent in Charge, Jackson, Mississippi.  I have been trained specifically in the

investigation and elements of federal crimes at the Federal Law Enforcement Training Center at Glynco, Georgia. I hold Bachelors of Art and Masters of Science degrees in Criminal Justice from the University of Southern Mississippi.  I am also a graduate of the United States Border Patrol Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico.  I have approximately 10 years of experience as a federal law enforcement officer and criminal investigator.

4.      My experience as a federal law enforcement officer and a criminal investigator includes the investigation and prosecution of violations of criminal laws relating to unlawful entry, employment, and physical presence in the United States of individuals subject to the Immigration and Nationality Act. My current duties include conducting criminal investigations of violations of Federal Statutes and administrative violations of the Immigration and Nationality Act and Title 18 of the United States Code.  As part of these duties, I have become involved in the investigation of suspected violations of Title 8, United States Code, Section 1324(a), Unlawful Employment of Aliens.  Through formal and on the job training, I am experienced in crimes involving the unlawful employment of aliens.  I have participated in the execution of numerous search warrants for documents and other evidence, including computers and electronic media.

5.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  This affidavit is based on my knowledge arising from my participation in this investigation; upon information provided to me by other Homeland Security Investigations (HSI) agents, law enforcement officers and government officials jointly participating in this investigation.  Because

2

this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of a search warrant, it does not contain every fact known to me or other agents of HSI.

6.      Section 274A of the Immigration and Reform Act of 1986 (IRCA) contains provisions which require all employers to verify the employment eligibility of all new employees hired after November 6, 1986.  The Form I-9 (Employment Eligibility Verification), hereto referred to as Form I-9, was developed for verifying that persons are eligible to work in the United States.  Employers must ensure the Form I-9 is completed every time a person is hired to perform labor or services in return for wages or other remuneration.  Any person who, during any 12-month period, knowingly hires for employment at least 10 individuals with actual knowledge that the individuals are unauthorized aliens is in violation of Title 8, United States Code, Section 1324(a)(3)(A).

7.      Intentional hiring of unauthorized aliens is a violation of Title 8, United States Code, Section 1324a. A person or entity which engages in a pattern and practice of violations in this Section shall be fined no more than $3000 for each unauthorized alien with whom such a violation occurs, imprisoned for not more than six months for the entire pattern or practice, or both, notwithstanding the provisions of any other Federal law relating to fine levels.

8.      A person who violates Title 8, United States Code, Section 1324, subparagraph (A) and in which the offense was done for the purpose of commercial advantage or private financial gain is in violation of Title 8, United States Code, Section 1324(a)(1)(B)(i).

9.      Intentional false statements, by making or using any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement on the Form I-9 is a felony violation of Title 18, United States Code, Section 1001.

3

10.     The Form I-9 is comprised of three Sections.  Section 1 is to be completed by the employee at the time of hire.  This Section contains the fields of name, address, date of birth, social security number, and the attestation of the employee as to their immigration status in the United States. Section 2 is to be completed by the employer and consists of three separate columns for List A, List B, and List C documents.  The employer is required to examine original documents presented by an employee and then complete this Section within three (3) days of the date the employment begins.  Some documents such as United States Passports, Certificates of Naturalization, Alien Registration Cards or Employment Authorization Cards establish both identity and employment eligibility (List A).  Other documents such as Drivers Licenses, and Voter Registrations Cards establish identity only (List B), while documents such as Social Security Cards and birth certificates establish employment eligibility only (List C).  In order for an employee to be deemed eligible to work by the employer, that employer must examine both one (1) document from List A, or one document from List B and one document from List C.  If employees are unable to present the required document(s) within 3 business days of the date the employment begins, they must present a receipt for the application for the document within three business days.  Employers must retain all I-9(s) for 3 years after the date of employment begins or 1 year after the person's employment is terminated, whichever is later.  Section 3 is completed by the employer to re-verify the employment authorization for current employees.  When an employee's work authorization expires, employers are required to re-verify on the Form I-9 not later than the date the employee's work authorization expires.

11.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 8 and Title 18 of the United States Code have been committed by P H Food, Inc and others.  There is also probable cause to search the

4

premises described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

12.     P H Food, Inc. is a chicken processing plant located at 4013 Highway 80, Morton, Mississippi, 39117. According to the Mississippi Secretary of State's website, P H Food, Inc. is a corporation in good standing that was incorporated on June 27, 2011 and is owned Victor LIANG (identified by HSI as Huo You LIANG). LIANG is also the owner of A & B, Inc., 1842 Highway 43 North, Pelahatchie, MS 39145, which is the subject of another affidavit.

13.     HSI Jackson, Mississippi, is investigating P H Food, Inc. for illegally employing subjects without work authorization in the United States. HSI Jackson has recently received information from Confidential Informant SA-110-JA, an employee of P H Food, Inc. who has provided reliable, credible and truthful information, suggesting P H Food, Inc. (a chicken processing company), is knowingly hiring and employing illegal aliens and/or subjects without employment authorization from the Department of Homeland Security (DHS). Initial queries within ICE databases revealed historical encounters and administrative arrests, of subjects illegally present in the United States that claimed to be employed by P H Food, Inc. in Morton, Mississippi.

## HISTORICAL ICE ENCOUNTERS/ARRESTS

14.     On February 27, 2019 ICE officers received information from Confidential Informant SA-110-JA, related to Diego PEREZ-Velazquez and Osiel AVILA-Parra; both illegal aliens from Mexico. SA-110-JA stated that Diego PEREZ-Velazquez and Osiel AVILA-Parra were currently employed by P H Food, Inc. in Morton, MS.

15.     According to the information, PEREZ-Velazquez was an illegal alien from Mexico who was previously removed from the United States, and who assumed the identity of a United States Citizen (USC) (Adrian Jonathan Anguiano) for the purpose of obtaining employment at P H Food, Inc. and to obtain a MS Driver's License. On February 28, 2019, ICE officers conducted several records check in different immigration, criminal and United States Department of State databases. ICE officers retrieved the photograph of the MS Driver's license issued to Adrian Jonathan Anguiano. ICE officers then conducted a search of aliens that have been arrested by the Jackson, MS office which resulted in the positive identification of Diego VELASQUEZ-Perez, A200 XXX XXX, a citizen and national of Mexico. VELAZQUEZ-Perez was arrested by the ICE/ERO, in Jackson, MS on December 8, 2010 and was granted a voluntary return to Mexico under safeguards. VELAZQUEZ-Perez was removed to Mexico on December 16, 2010. The photo on the MS Driver's License issued to Adrian Jonathan Anguiano resembled the photos of Diego VELASQUEZ-Perez found in ICE databases.

16.     The information of Adrian Jonathan Anguiano was also submitted to Law Enforcement databases and a United States Department of State database. ICE officers discovered that an individual with the exact biographical information (full name, date of birth (DOB), social security number (SSN) was issued a United States Passport Card on July 1, 2010 and a photo from the application was obtained. ICE officers also discovered that Adrian Jonathan Anguiano was arrested on October 13, 2012 and February 26, 2013 by the ICE office of investigations in El Paso, TX. At the time of these arrests, ICE agents determined that Adrian Jonathan Anguiano was a United States Citizen; subject photos from these encounters were also found in ICE databases. The photos of Adrian Jonathan Anguiano did not match the photo depicted on the MS driver's license.

6

17.     On February 28, 2019 at approximately 1100 hrs. ICE officers set up surveillance

at P H Food, Inc., located at 4013 Highway 80, Morton, MS 39117. At approximately 12:40 pm,

ICE officers witnessed a green Chevy truck, MS Tag SB2 1987, believed to be owned by

VELASQUEZ-Perez, returning to the chicken processing plant. ICE officers initiated a vehicle

stop in front of said plant and approached the driver. The driver provided a MS driver's license

to ICE officers and stated that he did not have insurance and or the registration of the vehicle

because he was not the owner of the truck. The driver stated that the truck owner was inside the

plant and agreed to call him on the phone, ask him to come out, and provide the documents to

ICE officers. A couple of minutes later a Hispanic male walked outside the plant and towards the

vehicle stop. ICE officers positively identified him to be the subject of the field operation after

he resembled the photo of VELAZQUEZ-Perez found in ICE databases. VELAZQUEZ-Perez

provided the MS driver license as means of identification and was detained by the officers. After

confronted with the ICE records and the photos of Adrian Jonathan Anguiano from El Paso, TX,

VELAZQUEZ-Perez then stated that his real name was Diego VELAZQUEZ-Perez, born in

Chiapas, Mexico and illegally present in the United States. VELAZQUEZ-Perez was arrested

and transported to the Pearl, MS ERO for further administrative proceedings.

18.     On April 8, 2019, ICE officers encountered Osiel AVILA-Parra (A206 XXX

XXX) while leaving his place of employment, P H Food, Inc., located at 4013 Highway 80,

Morton, MS 39117. ICE officers had determined that AVILA-Parra was an alien illegally present

in the United States who was previously removed to Mexico in 2013. ICE officers set up

surveillance at P H Food, Inc. and AVILA-Parra was seen entering his vehicle, a Dodge Charger,

License Plate SBA1721, and departed P H Food, Inc. at the end of his shift (approximately 4:30

pm). ICE officers conducted a vehicle stop and AVILA-Parra freely admitted being a

7

citizen/national of Mexico not in possession of proper immigration documents that would allow him to enter, pass through, or remain within the United States legally. AVILA-Parra was arrested and transported to the Jackson, MS ERO office for further processing. During the inventory of AVILA-Parra's property at the ICE office, ICE officers found a check stub with AVILA-Parra's name from P H Food, Inc. AVILA-Parra stated that said check stub was for his last payroll check and that he was paid twice a month. The check stub was for the period starting on March 19, 2019 until March 29, 2019 and shows AVILA-Parra's full name, employee number L05532, check date of April 5, 2019 and check number 002014052. The remittent is listed as P H Food, Inc. – PMI Resource (payroll company), 242 Lynbrook Blvd., Shreveport, LA 71106.

19.     On May 16, 2019, ICE/ERO in Jackson, MS encountered Daniel MORALES-Cabrera at the Scott County Jail located in Forest, MS. MORALES-Cabrera was arrested on or about May 4, 2019 by the Forest Police Department for Driving Under the Influence (DUI), Careless Driving, No Driver's License, and no Insurance. ICE Officers questioned MORALES-Cabrera as to his identity and he admitted to being a citizen/national of Mexico.  ICE officers also questioned MORALES-Cabrera as to his immigration status and he claimed to have entered the United States without inspection by an Immigration Officer about 18 years ago. MORALES-Cabrera was placed under arrest and transported to the ICE/ERO Jackson, MS office for further administrative processing.

20.     During processing MORALES-Cabrera stated that he works for P H Food, Inc. in Morton, MS under the name of Samuel Rivera. MORALES-Cabrera indicated that he has worked at the chicken plant for five years using a false Californian Identification Card that he bought for $150.00 USD. MORALES-Cabrera also stated that he is paid $10.00 USD per hour and works from 6:00 am to 4:30 pm.

8

21.     On May 16, 2019, ERO Deportation Officer (DO) Francisco Ayala reviewed a

Mississippi Department of Employment Security (MDES), Employer's Quarterly Wage Report,

1st quarter of 2019, for J & J Enterprises, LLC (MDES number 84-38639-0-00). On the report,

DO Francisco Ayala found the name of Samuel J Rivera (assumed identity of Daniel

MORALES-Cabrera). The report shows that for the 1st quarter of 2019, Samuel J Rivera with the

corresponding social security number XXX-XX-0567, was paid a total wage of $7,414.73 by J &

J Enterprises, LLC (as reported to MDES by J & J Enterprises, LLC) in the 1st quarter.

22.     DO Francisco Ayala submitted the information of Samuel Rivera and social

security number found on the wages report to law enforcement databases. While doing so, DO

Francisco Ayala identified a United States citizen born in Puerto Rico and currently living in

North Augusta, South Carolina as a possible victim of identity theft.

### DOCUMENTATION AND INTERVIEW WITH CONFIDENTIAL INFORMANT

23.     On April 24, 2019, HSI Special Agent (SA) Todd Williams and DO Francisco

Ayala along with HSI Jackson Resident Agent in Charge (RAC) Chris Heck documented

Confidential Informant (CI) SA-110-JA at the HSI Jackson, Mississippi office. Following the

documentation of SA-110-JA, SA Williams, DO Francisco Ayala, and RAC Heck conducted an

interview of SA-110-JA. During the interview SA-110-JA provided information related to P H

Food, Inc. in Morton, Mississippi. SA-110-JA has historically provided credible and reliable

information that has led to the arrest of numerous illegal aliens working at P H Food, Inc.

24.     SA-110-JA stated that P H Food, Inc. in Morton, Mississippi, employees

approximately 240 total individuals on two shifts (6:00 am to 2:00 pm and 2:00 pm to 10:00 pm.)

According to SA-110-JA approximately 224 of the P H Food, Inc. employees are suspected to be

illegal aliens. SA-110-JA provided the names Victor LIANG, Alvaro CARRILLO, and Heather

9

CARRILLO. According to SA-110-JA, LIANG is the owner of P H Food, Inc., Alvaro CARRILLO is the dayshift supervisor, and Heather CARRILLO is the secretary. SA-110-JA stated that LIANG lives in California but visits P H Food, Inc. on occasions. SA-110-JA stated Heather CARRILLO works the dayshift and is the primary individual responsible for hiring employees. According to SA-110-JA, CARRILLO receives the employment applications and identification documents from the applicants, and SA-110-JA believes the information is retained electronically on CARRILLO's computer in her office. According to SA-110-JA, illegal aliens utilize their real names and fraudulent social security numbers to work at P H Food, Inc. SA-110-JA stated P H Food pays employees via check and withholds taxes. SA-110-JA also stated that Victor LIANG owns numerous additional chicken processing plants, to include a location in Pelahatchie, MS (A& B Inc. 1842 Highway 43 North, Pelahatchie, MS 39145). SA-110-JA stated LIANG employs approximately 80 illegal aliens at the chicken processing plant in Pelahatchie (A& B, Inc., and the plant only operates a dayshift.)

25.    On April 29, 2019, HSI SA Todd Williams and DO Francisco Ayala conducted an interview of Confidential Informant SA-110-JA at the HSI Jackson, MS office. During the interview, SA-110-JA was provided with numerous photographs of potential suspects associated with P H Food, Inc. and SA-110-JA identified the following to SA Williams and DO Francisco Ayala;

> a.  SA Williams and DO Francisco Ayala provided SA-110-JA with a photograph of Alvaro GONZALEZ-Carrillo (A#209 XXX XXX.) SA-110-JA identified the subject as Alvaro GONZALEZ, and stated he was the dayshift supervisor at P H Food, Inc.

b.  SA Williams and DO Francisco Ayala provided SA-110-JA with a photograph of Heather CARRILLO. SA-110-JA identified the subject as Heather CARRILLO, and stated she was the secretary at P H Food, Inc.

c.  SA Williams and DO Francisco Ayala provided SA-110-JA with a photograph of Huo You LIANG (A#070 XXX XXX.) SA-110-JA identified the subject as Victor LIANG, and stated he was the owner of P H Food, Inc. and another chicken processing plant in Pelahatchie, MS.

d.  SA Williams and DO Francisco Ayala provided SA-110-JA with a photograph of YanJun LIANG (A#096 XXX XXX.) SA-110-JA identified the subject as "Yun", and stated he currently works in the administrative office at P H Food, Inc. The MS Secretary of State (SOS) records list YanJun LIANG as the Registered Agent, Director, President, and Treasurer for P H Food, Inc.

e.  SA Williams and DO Francisco Ayala provided SA-110-JA with a photograph of Weidong ZHOU (A#047 XXX XXX). SA-110-JA was unable to identify the subject my name, but stated the subject worked at a chicken processing plant in North Carolina.

f.  SA Williams and DO Francisco Ayala provided SA-110-JA with a photograph of Salvador DELGADO. SA-110-JA identified the subject as Salvador DELGADO, and stated he was a manager at the chicken processing plant in Pelahatchie, MS.

g.  SA Williams and DO Francisco Ayala provided SA-110-JA with a photograph of NianWang LIANG (A#097 XXX XXX.) SA-110-JA identified the subject

11

as "Papa", and stated he was historically a re-stacking supervisor at P H Food, Inc. approximately six years ago.

## ALTERNATIVES TO DETENTION

26.     ICE routinely utilizes the Alternatives to Detention (ATD) Program for subjects in ICE custody. The Alternatives to Detention Program is a flight-mitigation tool that uses technology and case management to ensure compliance with release conditions and facilitate alien compliance with court hearings and final orders of removal while allowing aliens to remain in their community contributing to their families, community organizations, and, if necessary, wrapping-up their affairs in the United States as they move through immigration proceedings. The ATD Program is not a substitute for detention nor is it used as a removal tool; however, the program may be appropriate for an alien who is released pursuant to: an Order of Release on Recognizance (OREC), an Order of Supervision (OSUP), a grant of parole; or a bond (unless the immigration judge or board of immigration appeals has determined custody and did not include ATD as a provision). To be eligible for the ATD program participants must be adults 18 years of age or older, be removable, and be at some stage of immigration proceedings. The ATD Program supervises participants, with contractor support, utilizing a combination of home visits, office visits, alert response, court tracking, and technology. The current government contractor (BI Inc.) for ATD operates under the Intensive Supervision Appearance Program (ISAP). The ISAP III contract allows ATD officers the ability to determine the frequency of home and office visits, types of technology, telephonic, GPS or SmartLink, court and alert management. Case management levels and technology assignment can be reviewed and adjusted by the ATD officer at any time depending upon change in circumstances and compliance.

12

27.     The ATD Program utilizes three (3) different forms of technology that help monitor participants while enrolled in the program. The forms of technology include:

a.   Telephonic reporting utilizes a participant's voice to create a biometric voiceprint during the enrollment process, every time the participant calls in his/her voice is compared against the voiceprint.

b.   GPS monitoring requires at least three (3) satellites to locate a unit attached to the participant's ankle. When a participant is within range of more than three satellites a GPS unit give more accurate data regarding the participant's location.

c.   SmartLink enables ATD officers and case specialists to keep participants focused on the conditions of release via their smartphone or tablet, they are able to verify a participant's identity, determine their location, and quickly collect status change information.

28.     Enrollment in the ATD program does not grant any immigration benefits including employment authorization.

**ILLEGAL ALIENS ENROLLED IN ATD & EMPLOYED BY P H FOOD, INC.**

29.     Queries of the subjects currently enrolled in the ICE/ERO Jackson ATD program, revealed 13 illegal aliens that in 2018 were working at P H Food, Inc. processing plants located at 4013 Highway 80, Morton, MS 39117 and as of July 29, 2019, 18 currently working (1 of which reported working for P H Food, Inc. to HSI Agents) at P H Food, Inc. processing plant in Morton, Mississippi.

13

30.     Below are examples of subjects currently enrolled in the ICE/ERO Jackson ATD program who have reported working for P H Food, Inc. and the analysis of historical GPS coordinates for the subjects and their history:

    a.  On May 20, 2017 Julisa Maurenis LOPEZ-Chilel, a Guatemalan national, was encountered by United States Border Patrol (USBP) agents in the El Centro, California Border Patrol Sector. At the time of the encounter, USBP agents determined LOPEZ-Chilel had unlawfully entered the United States from Mexico, at a place other than as designated by the Secretary of Homeland Security and did not possess legal documents to work or reside in the United States. LOPEZ-Chilel was arrested by USBP and transported to the El Centro Border Patrol Station for further administrative processing. LOPEZ-Chilel was processed for an Expedited Removal and turned over to ICE for custody determination. At that time, LOPEZ-Chilel provided ICE with an address of 78 Ott Dr., Morton, MS 39117, and was enrolled in the ICE/ERO/ATD program with GPS monitoring pending removal from the United States

On July 26, 2019 LOPEZ-Chilel reported telephonically to Deportation Officer Francisco J Ayala that she is currently employed with P H Food, Inc. located at 4013 Highway 80, Morton, MS 39117 and her current shift starts @ 6:00 am until 1:00 pm.  Queries of the historical GPS coordinates associated with LOPEZ-Chilel's electronic monitoring ankle bracelet (until February 11, 2019 when was de-escalated to SmartLink) revealed numerous daily captured coordinates located within the P H Food, Inc.

14

processing plant located in Morton, MS. Historical GPS coordinates also revealed LOPEZ-Chilel travels from her previous address (68 Thomas Dr., Morton, MS 39117) to the P H Food, Inc. processing plant multiple times a week.

Record checks for Julisa LOPEZ-Chilel revealed she does not possess employment authorization from the United States Department of Homeland Security.

b. On May 27, 2014 Carmelina CASH-Ramirez, a Guatemalan national, was encountered by USBP agents on Wrap Around Rd. near San Miguel, Arizona. At the time of the encounter, USBP agents determined CASH-Ramirez had unlawfully entered the United Stated from Mexico, at a place other than as designated by the Secretary of Homeland Security and did not possess legal documents to work or reside in the United States. CASH-Ramirez was arrested by USBP and transported to the Tucson Coordination Center for further administrative processing. CASH-Ramirez was served with an Expedited Removal Order (I-860) and turned over to ICE for custody determination. At that time, CASH-Ramirez provided ICE with an address of 10 Agnew St., Morton, MS 39117, and was enrolled in the ICE/ERO/ATD program with GPS monitoring pending removal from the United States.

CASH-Ramirez reported to the ATD/ISAP case specialist that she is currently employed in the chicken poultry business. Queries of the

15

historical GPS coordinates associated with Carmelina CASH-Ramirez'
electronic monitoring ankle bracelet revealed numerous daily captured
coordinates located within the P H Food, Inc. processing plant in Morton,
MS. Historical GPS coordinates also revealed CASH-Ramirez travels
from her current address (232 Farris Circle, Morton, MS 39117) to the P H
Food, Inc. processing plant multiple times a week. Upon arriving at the P
H Food, Inc. processing plant, CASH-Ramirez remains on the P H Food,
Inc. processing plant property for approximately 6 to 8 hours. For
example, on July 26, 2019, at approximately 4:43 am CASH-Ramirez
arrived at the P H Food, Inc. processing plant. CASH-Ramirez remained at
the P H Food, Inc processing plant until approximately 1:17 pm when she
departed and returned to her residence.

Record checks for Carmelina CASH-Ramirez revealed that on March 23,
2017 she applied for authorization to work (Receipt number
SRC1790359664) with the US Department of Homeland Security; this
application was denied on April 21, 2017. Record checks also revealed
that CASH-Ramirez is subject to a Final Order of Removal from the US
and has no pending appeals.

c.  On October 8, 2017 Maura Maudelia GOMEZ-Martinez, a Guatemalan
national, applied for admission into the United States of America at the
San Luis, Arizona Port of Entry. At the time of the encounter, CBP agents
determined GOMEZ-Martinez had unlawfully entered the United Stated

16

from Mexico, at a place other than as designated by the Secretary of Homeland Security and did not possess legal documents to work or reside in the United States. GOMEZ-Martinez was arrested by CBP and taken to the passport control section for further administrative processing. GOMEZ-Martinez was served with an Expedited Removal Order and turned over to ICE for custody determination. At that time, GOMEZ-Martinez provided ICE with an address of 78 Jasper St., Morton, Mississippi 39074, and was enrolled in the ICE/ERO/ATD program with GPS monitoring pending removal from the United States.

Queries of the historical GPS coordinates associated with GOMEZ-Martinez' electronic monitoring ankle bracelet revealed numerous daily captured coordinates located within the P H Food Processing Plant located in Morton. Historical GPS coordinates also revealed GOMEZ-Martinez travels from her current address (150 Williams Dr., Morton, Mississippi 39117) to the P H Food Processing Plant multiple times a week. Upon arriving at the P H Food Processing Plant, GOMEZ-Martinez remains on the P H Food Processing Plant property for approximately 7 to 8 hours. For example, on July 25, 2019, at approximately 2:24 pm GOMEZ-Martinez arrived at the P H Food, Inc. processing plant. GOMEZ-Martinez remained at the P H Food, Inc. processing plant until approximately 9:25 pm when she departed and returned to her residence.

17

Record checks for Maura Maudelia GOMEZ-Martinez revealed she does not possess employment authorization from the United States Department of Homeland Security.

## P H FOOD, INC. STAFFING AND PAYROLL COMPANY

31.     Records maintained by the MS SOS show that PMI Resource is a Limited Liability Company that operates under the names of PMI Services, LLC and PMI Resource DBA in the State of Mississippi. According to the MS SOS website, PMI Services, LLC was incorporated in the State of Louisiana and provides payroll services. The records also showed that PMI Services, LLC' principal address is 242 Lynbrook Blvd., Shreveport, LA 71106. According to the records, PMI Services, LLC was dissolved/Revoked on September 7, 2018.

32.     Records maintained by the Louisiana Secretary of State show that PMI Resources LLC is a Limited Liability Company operating in the State of Louisiana. The Louisiana Secretary of State website shows that PMI Resources, LLC is currently in good standing and their principal address is 242 Lynbrook Blvd., Shreveport, LA 71106.

33.     Further review of the wages reported to the MDES revealed that wages paid to Diego VELAZQUEZ-Perez (working under the identity of Adrian Jonathan Anguiano) and Osiel AVILA-Parra were originated from an employer named J & J Enterprises, LLC (MDES number 84-38639-0-00, FEIN number 900861692). Records maintained by the Louisiana Secretary of State show that J & J Enterprises, LLC is a Limited Liability Company that operates under the names of J & J Enterprise Operations, LLC (previously as J & J Poultry, LLC) in the State of Louisiana. The record shows that J & J Enterprise Operations, LLC's principal address is 242 Lynbrook Blvd., Shreveport, LA 71106.

18

34.     Records maintained by the MS SOS also show that J & J Poultry, LLC is a
Limited Liability Company that operates under the same name in the State of Mississippi and is
currently in good standing. According to the MS SOS website, J & J Poultry, LLC was
incorporated in the State of Louisiana and provides temporary help services. The records also
showed that J & J Poultry, LLC principal address is 242 Lynbrook Blvd., Shreveport, LA 71106.

35.     On May 6, 2019, DO Francisco Ayala reviewed a MDES, Employer's Quarterly
Wage Report, 1st quarter of 2019, for J & J Enterprises, LLC (MDES number 84-38639-0-00).
On the report, DO Francisco Ayala found the names of Adrian Jonathan Anguiano (assumed
identity of Diego VELAZQUEZ-Perez) and Osiel AVILA-Parra (reported social security number
XXX-XX-7849), both received wages during this quarter. DO Francisco Ayala also discovered
the names of multiple illegal aliens that are currently reporting to the ERO office in Jackson, MS
and who are currently enrolled in the ATD Program pending their removal from the United
States.

36.     DO Francisco Ayala submitted a sample of social security numbers found on the
wages report to law enforcement databases. While doing so, DO Francisco Ayala identified three
US citizens born in Mississippi and currently living in Mississippi as possible victims of identity
theft. For example, DO Francisco Ayala took the information reported on the MDES report for
Rocael LOPEZ with the corresponding SSN XXX-XX-7362 and found the said number was
issued by the Social Security Administration (SSA) to Daniel Long from Hazlehurst, MS; the
information reported on the MDES report for Olga AGUILON-Lopez with the corresponding
SSN XXX-XX-1528 and found the said number was issued by the SSA to Parker Anthony
Brocato from Leland, MS; and the information reported on the MDES report for Marcelino

19

ANTONIO with the corresponding SSN XXX-XX-8471 and found the said number was issued by the SSA to Terra Ray Watkins from Pass Christian, MS.

**RECORDED CONVERSATION INVOLVING SA-110-JA AND HEATHER CARRILLO**

37.     On May 14, 2019, at approximately 10:32 am, HSI Special Agents (SAs) Todd Williams, Brent Young, Chip Carter, and DO Francisco Ayala, conducted a recorded conversation between Confidential Informant (CI) SA-110-JA and P H Food, Inc. employee Heather CARRILLO at the Morton, MS, chicken processing plant. The conversation was video, and audio recorded for evidentiary purposes.

38.     The following is a summary of the conversation and is not intended to be a transcription. At approximately 10:42am, SA-110-JA, at the direction of agents, entered the administrative building at the P H Food, Inc. processing plant. At approximately 10:56 am, SA-110-JA and CARRILLO then started speaking about the A & B, Inc. plant in Pelahatchie, MS asking for real "documents" (i.e., legitimate United States Immigration identification documents) in order to be hired. CARRILLO stated that it was "Salvador" (Salvador DELGADO) who did that and that he was throwing dirt (CARRILLO believes that Delgado has been trying to persuade the company owner to terminate her and other supervisors so that he can assume their position in P H Food, Inc and continue his illegal activities.) on them (referring to the plant in Morton). SA-110-JA said that he/she was approached by 5 employees that asked if it was true that they would have to buy new "papers" (i.e., legitimate United States Immigration identification documents) to work at the Morton, MS plant. CARRILLO said that she was looking for some "papers" for "Iris", but "Iris" wasn't going anywhere because she was working with "Victor" (Huo You LIANG) for a good time (duration of employment) and she was pretty sure that he (referring to Salvador DELGADO) doesn't want her to report him, because she

20

knows which of his people (referring to employees) are real and which does not exist (referring to fraud on his part). (AGENT NOTE: agents believe that DELGADO has been embezzling money from A & B, Inc., by reporting fraudulent names and social security numbers to payroll and retaining the proceeds for himself.)

39.     CARRILLO stated that she finishes her job for Pelahatchie, MS (possibly referring to payroll reports) on Sundays and on Mondays the reports for P H Food, Inc. in Morton. CARRILLO later stated that she was not afraid of him (referring to Salvador) and she knew he was dirty.

40.     SA-110-JA stated that because of what the employees were saying, he/she wanted to know if they were doing the same here (referring to papers/documents) at the plant in Morton. CARRILLO responded that if this was the case, and not use a temporary company[1] (possibly referring to payroll company), it is a responsibility and "Victor" (Huo You LIANG) who does not want to be responsible for all these people (referring employees). CARRILLO then sated that is too much of responsibility when a temporary company is not used.

41.     At approximately 11:00 am, SA-110-JA asked CARRILLO what would happened with all these people they have (referring to employees at P H Food, Inc.) if they (referring to immigration) come, because he/she would get in trouble (meaning that he/she is also involved in the hiring of illegal aliens). CARRILLO indicated to SA-110-JA, not to be worried because he/she is not responsible for checking their "papers". CARRILLO further stated that if they came here (referring to immigration), she would refer them to Shreveport (PMI Resources, who

---

[1] P H Food, Inc, uses PMI Resources, Inc., and/or J & J Enterprises, L.L.C. to process payroll for the plants, which are located in Shreveport, Louisiana.

provides payroll services to P H Food, Inc.). (AGENT NOTE: Agents believe CARRILLO plans to minimize her involvement in the employment of illegal aliens by referring ICE officials to PMI Resources, L.L.C. in Shreveport, LA) At approximately 11:07 am the conversation ended.

## INTERVIEWS OF POSSIBLE IDENTITY THEFT VICTIMS

42.     On May 6, 2019, DO Francisco Ayala submitted a sample of SSN found on the MDES, Employer's Quarterly Wage's report for J & J Enterprises, LLC (staffing/payroll company for P H Food, Inc.) to law enforcement databases. While doing so, DO Francisco Ayala identified three United States citizens born in Mississippi and currently living in Mississippi as possible victims of identity theft. DO Francisco Ayala found that the SSN reported on the MDES report for Rocael LOPEZ was issued by the SSA to Daniel LONG from Hazlehurst, Mississippi; the SSN reported on the MDES report for Olga AGUILON-Lopez was issued by the SSA to Parker Anthony BROCATO from Leland, MS; and the SSN reported on the MDES report for Antonio MARCELINO was issued by the SSA to Terra Rae WATKINS from Gulfport, MS.

43.     On May 16, 2019, HSI Special Agent (SA) Brent Young and DO Francisco Ayala conducted an interview of Daniel LONG at his residence located at 4132 Pearl Valley Road, Hazlehurst, MS 39083. During the interview Mr. LONG provided personal information related to his identity, employment and current residence. Mr. LONG stated that he was a United States Citizen born in Hazlehurst, MS on December 6, XXXX. Mr. LONG indicated that his current address is XXXX Pearl Valley Road, Hazlehurst, MS 39083. Mr. LONG provided to HSI agents a MS Driver's License (number 80077XXXX) as means of identification and a social security card (number XXX-XX-7362). Mr. LONG stated that he has never lived outside of the state of MS and has never provided anyone with his identity documents. Mr. LONG also stated that he currently works for ABB, Inc. in Crystal Springs, MS.

22

44.    On May 15, 2019, HSI SA Todd Williams and DO Francisco Ayala conducted an interview of Parker Anthony BROCATO at the HSI Jackson, MS office. During the interview BROCATO provided personal information related to his identity, employment and current residence. Mr. BROCATO stated that he was a United States Citizen born in Greenville, MS on January 22, 1990. Mr. BROCATO indicated that his current address is XXX Redbud Dr., Leland, MS 38756. Mr. BROCATO provided HSI agents a MS Driver's License (number 80095XXXX) as means of identification and stated he was issued a United States passport in 2009. Mr. BROCATO also stated that he has never lived outside of the state of MS and has never provided anyone with his identity documents. Mr. BROCATO also stated that he currently works for the MS Department of Transportation in Leland, MS.

45.    On May 20, 2019, HSI SA Danyelle EVANS and Customs and Border Protection Officer (CBPO) Jonathan P. BUTSCH conducted an interview of Terra Rae WATKINS at her residence located in Pass Christian, MS. During the interview WATKINS provided personal information related to her identity, employment and current residence. Mrs. WATKINS stated that he was a United States Citizen born in Gulfport, Mississippi (MS) on January 9, XXXX. Mrs. WATKINS indicated that her current address is XXX Peachtree St., Pass Christian, MS 39571. Mrs. WATKINS provided HSI agents a MS Driver's License (number 801474XXXX) as means of identification and stated that her SSN is XXX-XX-8471. Mrs. WATKINS also stated that she has never lived outside of the state of MS and has never provided anyone with her identity documents. Mrs. WATKINS also stated that she currently works for Hancock Bank in Gulfport, MS.

## E-VERIFY COMPLIANCE

46.     The Mississippi Employment Protection Act (MS code section 71-11-3) requires employers to participate in the United States Department of Homeland Security E-Verify Program. According to the MS statute, employers in the State of Mississippi shall only hire employees who are legal citizens of the United States or are legal aliens; the statute defines a legal alien as an individual who was lawfully present in the United States at the time of employment and for the duration of such, or was permanently residing in the United States under color of law at the time of employment and for the duration of such. Under the Mississippi Employment Protection Act, every employer (including a third-party employer) shall register with and utilize the E-Verify Program to verify the work eligibility status of all newly hired employees (does not apply to employees hired before July 1, 2008). According to the Act, "it shall be a felony for any person to accept or perform employment for compensation knowing or in reckless disregard that the person is an unauthorized alien with respect to employment during the period in which the unauthorized employment occurred."

47.     E-Verify, is authorized by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) and is a web-based system through which employers electronically confirm the employment eligibility of their employees.

48.     According to the handbook for employers M-274, E-Verify is a system that provides access to federal databases to help employers confirm the employment authorization of new hires. E-Verify is free and can be used by employers in all 50 states, as well as the District of Columbia, Puerto Rico, Guam, the United States Virgin Islands, and the Commonwealth of the Northern Mariana Islands.

24

50.     Employers who participate in E-Verify must complete Form I-9 for each newly hired employee in the United States.  After completing a Form I-9 for the new employee, the employer creates a case in E-Verify that includes information from Sections 1 and 2 of Form I-9 (E-Verify then electronically compares that information to records available to the DHS and the SSA). After creating the case, the employer will receive a response from E-Verify regarding the employment authorization of the employee. In some cases, E-Verify will provide a response indicating a tentative non-confirmation (TNC) of the employee's employment authorization. This does not necessarily mean that the employee is unauthorized to work in the United States. Rather, it means that E-Verify is unable to immediately confirm the employee's authorization to work. In the case of a TNC, the employer must notify the employee, and an employee who wishes to contest a TNC result should contact the appropriate agency (DHS or SSA) within the prescribed time periods.

51.     Under the rules of E-Verify contained in the E-Verify Employer Handbook and in the E-Verify MOU for J & J Enterprises (E-Verify Company ID Number 583282), when an employer receives a TNC for an employee, the employer should first print the TNC Notice and review it with the employee promptly and privately. Employees who choose the TNC Notice should be provided with a TNC referral letter by the employer. Employees have a right to contest or not to contest the TNC. If the employee does not contest the TNC, the employer must terminate the employee. If the employee contests the TNC, the employee has eight federal government work days from the referral date to visit or call the appropriate agency to start to resolve the discrepancy. The employee continues to work during the resolution process. If the employee contests the TNC but does not take action to resolve the TNC beyond the eight federal government work days, the employer has the right to terminate the employee. E-Verify does not

25

instruct the employer to terminate the employee who has an unresolved TNC. However, the employer is instructed under the E-Verify rules that administrative and criminal penalties may be assessed against the employer for Knowingly Continuing to Employ an unauthorized worker (INA Section 274 (a)(3)(A); 8 U.S.C. 1324).

52.     E-Verify also specifies that if an employee provides an alien number in Section 1 of the Form I-9, the employer must query the alien number in the E-Verify system regardless of any other identification documents that employee provides for use in Column B and C in Section 2 of the Form I-9.  When the employer queries an alien number provided by the employee, the E-Verify system will display the photograph and card information of the person who is assigned the alien number. As part of the Form I-9 completion process, the employer is required to accept only original identification documents that reasonably appear to be genuine and relate to the person presenting them. The information on the identification documents and in the E-Verify system must match in order for the employment to be authorized. If the photograph of the employee does not match the photograph of the person who is assigned the alien number in the E-Verify system, the employer must notify DHS. The employer is also required to record the E-Verify case verification number on the employee Form I-9 or attach a screen print of the E-Verify verification page to the employee Form I-9.

53.     On May 17, 2019, HSI agents sent a request for the E-Verify Query Extracts of P H Food, Inc., J & J Enterprises, LLC and PMI Resources, LLC to HSI Headquarters Worksite Enforcement Unit. On May 20, 2019, HSI agents received the query extracts from United States Citizen and Immigration Services (USCIS).

54.     According to a USCIS E-Verify system records query on May 20, 2019, PMI Resources, LLC has had access to the E-Verify System since June 9, 2008. USCIS was unable to

26

find accounts for P H Food, Inc. and J & J Enterprises, LLC in the E-Verify System. According

to a USCIS E-Verify system records query on May 20, 2019, three different employer

identification (ID) numbers were found for PMI Resources, LLC:

    a.  Personnel Management, Inc (employer ID 125234) is located at 242 Lynbrook

        Blvd., Shreveport, LA 71106, and according to the E-Verify system records

        query, this company has had access to the E-Verify system since June 9, 2008

        (E-Verify Memorandum of Understanding (MOU)) and there is a total of 9

        authorized users to access the system. Records query conducted by USCIS

        revealed that the company points of contact are: Mr. William BYRD, Mrs.

        Donna GLASS and Mrs. Beverly HARMON. There have been 1,304 E-Verify

        queries of employees since the company obtained access to E-Verify. Mrs.

        GLASS has conducted 23 queries with the last query occurring on February 7,

        2014. Mrs. HARMON has conducted 1087 queries with the last query

        occurring on May 8, 2018 and another user identified in the E-Verify system

        as Mr. Florence GRESENS, conducted 194 queries with the last query

        occurring on May 9, 2019.

    b.  Personnel Management, Inc (Employer ID 131465) is located at 242

        Lynbrook Blvd., Shreveport, LA 71106, and according to the E-Verify system

        records query, this company has had access to the E-Verify system since June

        26, 2008 (MOU date). Records query conducted by USCIS revealed that the

        company point of contact is Mrs. Donna GLASS. There have been 897 E-

        Verify queries of employees since the company obtained access to E-Verify.

Mrs. GLASS has conducted 23 queries and Mrs. HARMON has conducted 874 queries with the last query occurring on October 27, 2014.

c. PMI Resource (employer ID 283282) is located at 242 Lynbrook Blvd., Shreveport, LA 71106, and according to the E-Verify system records query, this company has had access to the E-Verify system since July 19, 2012 (MOU date) and there is a total of 13 authorized users to access the system. Records query conducted by USCIS revealed that the company points of contact are Mrs. Donna GLASS and Mrs. Beverly HARMON. There have been 16 E-Verify queries of employees since the company obtained access to E-Verify. Mrs. HARMON has conducted 8 queries with the last query occurring on January 9, 2018; Mrs. Michelle CUMMINGS conducted 5 queries with the last query occurring on January 31, 2018; Mr. Florence GRESENS conducted 2 queries with the last query occurring on July 2, 2018; and Mrs. Kelly KARBOWSKI conducted 1 query on September 14, 2018.

55.    On May 23, 2019, with the assistance of the USCIS, Verification Division, J & J Enterprises was found in the E-Verify System and the corresponding E-Verify Extracts along with a copy of the MOU were received from USCIS. According to a USCIS E-Verify system, J & J Enterprises, LLC (employer ID 1190350) is located at 242 Lynbrook Blvd., Shreveport, LA 71106 and has had access to the E-Verify System since April 18, 2017. Records query conducted by USCIS revealed that the company point of contact is Mrs. Donna GLASS. There have been 374 E-Verify queries of employees since the company obtained access to E-Verify. User BHAR1823 (believed to be Mrs. Beverly HARMON) has conducted 69 queries with the last query occurring on March 27, 2018. User FGRE1004 (believed to be Mr. Florence GRESENS)

28

has conducted 288 queries with the last query occurring on May 21, 2019. User VBOS2635 (believed to be Mr. Val BOSWELL) conducted 16 queries with the last query occurring on May 14, 2019.

56.     DO Francisco Ayala took a sample of 20 employees reported on the employer's quarterly wage report (1st quarter of 2019) for J & J Enterprises, LLC and reviewed if those employees were queried in the E-Verify system. The information related to the 3 identity theft victims and the 3 recently arrested illegal aliens were also reviewed. The following names and SSN were reviewed in the E-Verify extracts:

> a.  Simon PARRA-Avila (SSN 008-XX-XXX)
>
> b.  Pedro CATALAN-Garcia (SSN 035- XX-XXX)
>
> c.  Heidi M MALDONADO-De Leon (SSN 060- XX-XXX)
>
> d.  Juan JIMENEZ-Ramirez (SSN 066- XX-XXX)
>
> e.  Gladis GARCIA-Maza (SSN 082- XX-XXX)
>
> f.  Sandra C HERNANDEZ-Gonzalez (SSN 084- XX-XXX)
>
> g.  Luis F ROLDAN-Gomez (SSN 111- XX-XXX)
>
> h.  Samuel J RIVERA (SSN 138- XX-XXX)
>
> i.  Mirtala MARTINEZ-Ordonez (SSN 157- XX-XXX)
>
> j.  Delfina PEREZ-Rivas (SSN 192- XX-XXX)
>
> k.  Victoriano MORALES-Domingo (SSN 206- XX-XXX)
>
> l.  Edgar DE LEON-Castillo (SSN 208- XX-XXX)
>
> m. Trinidad TEMA-Lopez (SSN 217- XX-XXX)
>
> n.  Rony DIAZ-Roblero (SSN 223- XX-XXX)
>
> o.  Omar M MARTINEZ (SSN 235- XX-XXX)

    p.  Letizia GAMALIEL-Francisco (SSN 241- XX-XXX)

    q.  Linda RAMIREZ (SSN 246- XX-XXX)

    r.  Queyni A ROBLERO-Hernandez (248- XX-XXX)

    s.  Jorge VELAZQUEZ (SSN 249- XX-XXX)

    t.  Anita PASUAL-Sebastian (SSN 257- XX-XXX)

    u.  Adrian J. ANGUIANO (SSN 638- XX-XXX)

    v.  OSIEL AVILA-Parra (SSN 369- XX-XXX)

    w.  Rocael LOPEZ (SSN 425- XX-XXX)

    x.  Olga AGUILON-Lopez (SSN 425- XX-XXX)

    y.  Marcelino ANTONIO (SSN 428- XX-XXX)

57.    The review of this sample revealed that PH Food, Inc., PMI Resources and J & J Enterprises have failed to comply with the E-Verify MOU and the requirements set forth by the Mississippi Employment Protection Act (MS code section 71-11-3). None of the sampled employees were found to be queried in the E-Verify system although the companies have had access to the E-Verify system and have queried over a thousand other employees through the system as required by state law and the E-Verify MOU.

58.    This affidavit is being submitted simultaneously with an administrative warrant for inspection to search at P H Food, Inc., located at 4013 Highway 80, Morton, Mississippi 39117, for persons believed to be working in the United States without authorization.

## CONCLUSION

59.    Based on the facts and information as stated in this affidavit and my training and experience, I submit that this affidavit supports probable cause for a warrant to search the PREMISES described in Attachment A to seize the items described in Attachment B.

60.     Based upon my training and experience, combined with the facts and observations set forth in the foregoing paragraphs, I have reason to believe and do believe there exists probable cause that evidence of violations of Title 8, United States Code, Section 1324(a), Unlawful Employment of Aliens,  Title 18, United States Code, Section 1001, Title 18, United States Code, Section 1546(a), Fraud and misuse of visas, permits, and other documents to gain employment, Title 18, United States Code, Section 1028(a)(7), Fraud and related activity in connection with identification documents, authentications features, and information, Title 18, United States Code, Section 1015(e), False statement to obtain benefits or employment, Title 18, United States Code, Section 911, False claim to be a Citizen of the United States, and Title 42, United States Code, Section 408(a)(7)(B), Use of Unauthorized Social Security Number and fruits of such crimes or property designed, intended for or used for such crimes are located at the PREMISES described in Attachment A.

61.     In consideration of the facts presented, I respectfully request that this Court issue a search warrant for the premises located at 4013 Highway 80, Morton, Mississippi 39117, and all appurtenances thereto as more fully described in Attachment A and authorize the seizure of the items described in Attachment B to this Affidavit.

## REQUEST FOR SEALING

62.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_Anthony Todd Williams_

Anthony Todd Williams Jr.
Special Agent
US Immigration and Customs Enforcement
Homeland Security Investigations

Subscribed and sworn to before me on the __5__ day of August, 2019.

_Linda R. Anderson_

LINDA R. ANDERSON
UNITED STATES MAGISTRATE JUDGE

32

## **ATTACHMENT A**

### **Property/Premises to be Searched**

The property/premises to be searched is further described as being located at 4013 Highway 80, Morton, Mississippi 39117 and its curtilage.  P H FOOD, INC. consists of one building used for production, administrative office and out buildings, appurtenances, attached and detached garages and vehicles and trailers located on its curtilage, including any and all parking lots.

**North side view**



**East side view**



**South side view**



**West side view**



## ATTACHMENT B

### *Persons or Property to be seized*

Evidence, fruits, and instruments of the crimes described in the attached affidavit, namely:

1. Aliens present in the United States without legal authority.

2. All documents, records, and implements (whether in electronic or hard-copy format), information and communication including e-mail, text, instant messages, attachments and files relating to violations of Title 8, United States Code, Section 1324(a), Unlawful Employment of Aliens,  Title 18, United States Code, Section 1001, Title 18, United States Code, Section 1546(a), Fraud and misuse of visas, permits, and other documents to gain employment, Title 18, United States Code, Section 1028(a)(7), Fraud and related activity in connection with identification documents, authentications features, and information, Title 18, United States Code, Section 1015(e), False statement to obtain benefits or employment, Title 18, United States Code, Section 911, False claim to be a Citizen of the United States, and Title 42, United States Code, Section 408(a)(7)(B), Use of Unauthorized Social Security Number, those violations involving P H Food, Inc. and the location described in Attachment A (The PREMISES), including:

   a. Labor and employment records including service agreements, independent contractor agreements, I-9s, volunteer worker agreements and statements, lists of workers (paid or unpaid), job assignment sheets, duty rosters, employment applications, personnel files, worker identification documents, and electronic communications related to the same;

   b. Business records including: payroll records, timesheets, lists of employees, communications with outside payroll services providers; bank records, financial

statements, bookkeeping/accounting records, expenditure records, check registers, bills, receipts, invoices, ledgers and notes, including records disclosing the identity and purpose of all deposits, withdrawals, debit and credit memos, interest received, and other transactions on the accounts;

c.  Identification documents (or copies of same) including, but not limited to, driver's licenses, state identification cards, birth certificates, Social Security administration cards, Lawfully Admitted Permanent Resident cards, or any other documents that may be used to enter, remain, or work in the United States, including, but not limited to counterfeit immigration documents and/or seals;

d.  Any and all correspondence to or from P H Food, Inc.. and the United States Department of Labor, the Social Security Administration and the Internal Revenue Service with regard to employee identification documentation provided by P H Food, Inc.;

e.  Employee identification cards and copies of employee identification cards;

f.  Documentation of business ownership, organization, and control including articles of incorporation, partnership agreements, joint venture agreements, corporate minutes and other official administrative records;

g.  United States or foreign passports, visas, papers, tickets, notes, schedules, receipts and other items relating to international or domestic travel;

h.  Safes, file cabinets, lockers, safe deposit boxes, or any other locked containers capable of holding the items described above;

2

3. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

    d.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

    e.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

    f.  evidence of the times the COMPUTER was used;

3

    g.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

    h.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

    i.  contextual information necessary to understand the evidence described in this attachment;

    j.  Routers, modems, and network equipment used to connect computers to the Internet;

    k.  Badging system records to include, but not limited to, current and historical data including dates and times of facilities access, location accessed, names of individuals issued badges, and any other data related to the badging system.

4.  As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

5.  The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high-speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

6.  The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

7.  Best efforts will be made to image on site.  Agents may remove any computers from the location for off-site processing if on-site imaging proves unfeasible.  If off-site processing becomes necessary, all computers or devices will be returned within ten (10) business days.

8.  It may be necessary to extract all e-mails from e-mail accounts; however, the search itself will be limited to e-mails between January 1, 2014 and present.

## PROTOCOL

**FILTER TEAM**

Our filter team procedures for this search are not incorporated herein; however, we intend to use filter procedures to safeguard privileged materials.